Electronically Filed
Intermediate Court of Appeals
CAAP-14-0001393
28-JUN-2017
08:05 AM

NO. CAAP-14-0001393

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
JOHN LANOZA, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 12-1-1116)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Ginoza, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant John Lanoza (Lanoza) with one count of attempted murder in the second degree. The charge arose from an incident in which Lanoza attacked a taxi driver, cutting him in the neck, arm, and shoulder with a blade, after the taxi driver had given Lanoza a ride. Lanoza opted for a bench trial and raised the affirmative defense of lack of penal responsibility "as a result of physical or mental disease, disorder, or defect" under Hawaii Revised Statutes (HRS) § 704-400 (2014).[1] At trial,

---

[1] HRS § 704-400 provides, in relevant part:

(1) A person is not responsible, under this Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

Lanoza and the State called mental health experts to testify on the question of Lanoza's penal responsibility at the time of the charged offense. At the close of the evidence, the Circuit Court of the First Circuit (Circuit Court),[2] based on its assessment of the credibility and weight of the expert testimony presented, found that Lanoza had failed to prove his affirmative defense of lack of penal responsibility by a preponderance of the evidence. The Circuit Court further found that the State had proved beyond a reasonable doubt that Lanoza had committed the charged offense of attempted second-degree murder. The Circuit Court sentenced Lanoza to life imprisonment with the possibility of parole, and it filed its Judgment on December 3, 2014.

On appeal, Lanoza contends that the Circuit Court clearly erred in finding that he failed to prove the affirmative defense under HRS § 704-400 of lack of penal responsibility as a result of physical or mental disease, disorder, or defect. In particular, Lanoza argues that the Circuit Court erred in relying on the State's experts rather than his expert in finding that he failed to prove the affirmative defense. We affirm.

BACKGROUND

I.

At about 1:00 a.m., Howard Kau (Kau), who was driving his taxi, saw Lanoza waving him over from the sidewalk. Lanoza asked Kau to drive to a park in Kaimuki so that Lanoza could meet "two girls . . . to party with." Upon arriving, however, Kau noticed that the park was dark and appeared to be closed. Kau and Lanoza were unable to locate the women Lanoza had mentioned. Lanoza then asked Kau to take him to the Mo'ili'ili Jiffy Lube.

When Kau arrived at the Jiffy Lube and parked the taxi, Lanoza used a blade to cut Kau on the right side of his neck. Kau pushed Lanoza's forearm away, and as Kau turned to release his seat belt, Lanoza cut Kau a second time on the right arm. As

---

[2] The Honorable Richard K. Perkins presided.

Kau exited the taxi, Lanoza cut him a third time on the left shoulder.

Kau tried to open the rear driver's side door to grab Lanoza. Lanoza attempted to cut Kau, and Lanoza closed the door and locked it. Kau walked to the adjacent Burger King parking lot to seek help, and someone called 911.

Police officers responded to the scene and Kau gave them a description of Lanoza. The police found Lanoza lying on his back under a Honda CR-V parked about 40 or 50 feet from Kau's taxi. An officer ordered Lanoza to come out from under the car. Lanoza did not immediately comply and appeared to be trying to hide his hands and "reaching his hands up" into the undercarriage of the car. After Lanoza came out, the police searched under the CR-V and recovered a blade from the undercarriage of the car near the CR-V's right rear tire. DNA analysis revealed that the DNA profile obtained from the blade matched Kau's DNA profile.

Kau was taken by ambulance to Queen's Medical Center. The physician who treated Kau noted a deep, ten-centimeters-long laceration on Kau's neck near his carotid artery and jugular vein; a long and continuous laceration from near Kau's right armpit towards his elbow; and a deep laceration on Kau's back. The physician opined that the injuries Kau suffered created a substantial risk of death. In particular, the physician opined that "the extensive blood loss as a result of the injuries caused a hemorrhagic shock and a substantial risk of death for Kau."

Lanoza "[t]ested positive for crystal methamphetamine" shortly after he was arrested. Lanoza later reported that he had smoked crystal methamphetamine and marijuana and had drank about a quart of beer about two to three hours before the alleged offense.

II.

Prior to trial, the Circuit Court appointed Psychiatrist Kosta Stojanovich, M.D. (Dr. Stojanovich), Psychologist Duke E. Wagner, Ph.D. (Dr. Wagner), and Psychologist Alex Lichton, Ph.D. (Dr. Lichton), to determine Lanoza's fitness

to proceed to trial and his penal responsibility at the time of the charged offense. All three mental health experts agreed that Lanoza was fit to proceed to trial, but they did not all have the same opinion with respect to his penal responsibility at the time of the charged offense.

Lanoza asserted the defense of lack of penal responsibility under HRS § 704-400, which provides that

> [a] person is not responsible, under [the Hawaii Penal] Code, for conduct if at the time of the conduct as a result of physical or mental disease, disorder, or defect the person lacks substantial capacity either to appreciate the wrongfulness of the person's conduct or to conform the person's conduct to the requirements of law.

Lack of penal responsibility under HRS § 704-400 is an affirmative defense that the defendant has the burden of proving by a preponderance of the evidence. HRS § 704-402 (2014); State v. Uyesugi, 100 Hawaiʻi 442, 456, 60 P.3d 843, 857 (2002); HRS § 701-115(2)(b) (2014). The Hawaii Penal Code also generally provides that "[s]elf-induced intoxication is prohibited as a defense to any offense[.]" HRS § 702-230(1) (2014).

At trial, Lanoza called Dr. Wagner. Dr. Wagner opined that Lanoza's cognitive capacity (capacity to appreciate the wrongfulness of his conduct) was not impaired at the time of the incident, but that his volitional capacity (capacity to conform his conduct to the requirements of the law) "may have been significantly impaired[.]" Dr. Wagner acknowledged that impairment of Lanoza's volitional capacity may have been affected to a degree difficult to quantify by Lanoza's crystal methamphetamine substance abuse. However, Dr. Wagner stated that he considered other factors besides Lanoza's substance abuse in opining that Lanoza's volitional capacity "may have been significantly compromised at the time of the alleged offense[] by the totality of his conditions."

The State called Drs. Lichton and Stojanovich in rebuttal. Dr. Lichton testified that in evaluating Lanoza's penal responsibility at the time of the charged offense, Dr.

4

Lichton interviewed Lanoza, analyzed tests he gave to Lanoza, and reviewed relevant records, including Lanoza's medical and mental health records and records relating to his criminal history. After considering a variety of factors, Dr. Lichton opined that Lanoza did "appear to be penally responsible" at the time of the charged offense. At trial, Dr. Lichton explained the factors he analyzed and relied upon in reaching his opinion.

Dr. Stojanovich's testimony at trial vacillated and was somewhat contradictory. However, he ultimately appeared to maintain the opinion he expressed in his written evaluations that it was "[m]uch more likely" that Lanoza was penally responsible at the time of the charged offense.

III.

After hearing the evidence, the Circuit Court found that Lanoza had failed to prove his affirmative defense of lack of penal responsibility, and it explained its ruling as follows:

> Now, the defendant relies on the affirmative defense of physical or mental disease, disorder, or defect excluding penal responsibility, which he has the burden of proving by a preponderance of the evidence. I find, however, that the defendant has failed to prove the defense by a preponderance of the evidence. I do so primarily in reliance on the testimony of Dr. Alex Lichtin [sic], which I find credible and really the most persuasive of any of the expert testimony I heard at the trial in this case. I have also factored into my decision Dr. Wagner's belief that the defendant's cognitive functioning was not substantially impaired at the time of the offense, [h]is testimony that the defendant's volitional capacity may have been rather than was impaired, and the qualifications he placed on that opinion, in his own words, the hedging regarding the effect on the defendant's volitional capacity of substance dependence and/or substance abuse relative to the other possible contributing factors.
>
> Lastly, I note that Dr. Stojanovich's testimony, although ill prepared and at times confused, was in the final -- final analysis consistent with Dr. Lichtin's [sic] position on the issue of penal responsibility. Accordingly, I find the defendant guilty as charged.

DISCUSSION

On appeal, Lanoza contends that the Circuit Court erred in relying on Dr. Lichton's and Dr. Stojanovich's testimonies and by rejecting Dr. Wagner's testimony. Based on this contention,

Lanoza argues that there was insufficient evidence to support the Circuit Court's finding that he failed to prove his affirmative defense of lack of penal responsibility by a preponderance of the evidence. We conclude that Lanoza's argument is without merit.

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether substantial evidence exists to support the conclusion of the trier of fact. State v. Romano, 114 Hawaiʻi 1, 6-7, 155 P.3d 1102, 1107-08 (2007). "Substantial evidence means credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." State v. Agard, 113 Hawaiʻi 321, 324, 151 P.3d 802, 805 (2007) (internal quotation marks and citation omitted). We will affirm the Circuit Court's finding that Lanoza failed to prove the affirmative defense of lack of penal responsibility under HRS § 704-400 as long as there was substantial evidence to support the finding. See State v. Young, 93 Hawaiʻi 224, 231, 999 P.2d 230, 237 (2000).

Lanoza argues that the Circuit Court erred in relying on Dr. Lichton's and Dr. Stojanovich's testimonies rather than on Dr. Wagner's testimony. However, "[m]atters of credibility and the weight of the evidence and the inferences to be drawn are for the fact finder." Romano, 114 Hawaiʻi at 8, 155 P.3d at 1109; State v. Eastman, 81 Hawaiʻi 131, 139, 913 P.2d 57, 65 (1996) ("An appellate court will not pass upon the trial judge's decisions with respect to the credibility of witnesses and the weight of the evidence, because this is the province of the trial judge.").

As the Hawaiʻi Supreme Court has stated:

> The findings of an expert are always entitled to serious consideration by the trier of fact, but the weight the factfinder gives to expert evidence is dependent upon its own assessment of the facts upon which the expert's opinion is predicated, upon the validity of the expert's assumptions, upon the reliability of the diagnostic and analytical processes by which the expert arrived at his determinations, and upon all other facts and circumstances bearing upon the issue.

6

Young, 93 Hawai'i at 231-32, 999 P.2d 237-38 (block quote format altered and citation omitted).

Here, Dr. Lichton, Dr. Stojanovich, and Dr. Wagner were all qualified as experts, and they each explained the basis for their respective opinions regarding Lanoza's penal responsibility. The various factors cited by Lanoza on appeal for why he contends Dr. Wagner's opinion was more credible were presented to the Circuit Court and were before the Circuit Court when it rendered its decision. The Circuit Court evaluated the conflicting evidence, and based on its own assessment of the credibility of the witnesses and its evaluation of the weight to be given to the evidence, the Circuit Court found that Lanoza had failed to prove the affirmative defense of lack of penal responsibility by a preponderance of the evidence. We conclude that there was substantial evidence to support the Circuit Court's finding, and we affirm the Circuit Court's determination that Lanoza had failed to meet his burden of proving the affirmative defense of lack of penal responsibility.

CONCLUSION

Based on the foregoing, we affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawai'i, June 28, 2017.

On the briefs:

Randall K. Hironaka
(Miyoshi & Hironaka, LLLC, AAL)
for Defendant-Appellant

Brandon H. Ito
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*[signature]*

Associate Judge

*[signature]*

Associate Judge

7